Nickelson v. Dial.

## ED NICKELSON v. JOHN M. DIAL.
### No. 14,890. (93 Pac. 606.)
#### SYLLABUS BY THE COURT.

1. AGENCY—*Authority—Evidence.* A mere special agent will not be presumed to have authority to take, in his own name, and negotiate a promissory note for money due or to become due to his principal.

2. EVIDENCE — *Cross-examination.* Where an action is commenced by the holder of a promissory note, claiming to be an innocent purchaser thereof, who, instead of resting upon the *prima facie* effect of the note, presents the payee thereof as a witness to establish his ownership of and right to negotiate such note, the witness will be subject to cross-examination as in other cases.

3. ——— *Secondary.* Where, in such a case, the payee testifies that his authority to take and negotiate the note is contained in a contract with his principal, outside statements of such authority should be rejected when objection to their admission is properly made.

Error from Riley district court; SAM KIMBLE, judge. Opinion filed January 11, 1908. Affirmed.

#### STATEMENT.

THIS is an action on a promissory note. It was commenced April 3, 1905, in the district court of Riley county, by the plaintiff in error against the defendant

Nickelson v. Dial.

in error.   The petition was the ordinary form used in such actions.   The note reads:

"THE LARGEST IN THE WORLD.

| | |
|---|---|
| "THE MUTUAL<br>LIFE<br>INSURANCE<br>Co.<br>OF NEW YORK,<br>Organized<br>Feb. 1, 1843. | $138.83.                      MARCH 1, 1904.<br>On or before January 1, 1905, for value received, I promise to pay to A. B. Headington, special agent, or order, one hundred and thirty-eight and $83/100$ dollars, with interest from maturity at the rate of 8% per annum. If interest is not paid when due, same shall become part of the principal and draw interest at the same rate.   JOHN M. DIAL." |

Assets $382,532,681.30.
"Indorsement: A. B. HEADINGTON."

The answer consisted of a general denial, and a plea of failure of consideration, but admitted the execution of the note.

On the trial the plaintiff introduced the note in evidence, and then offered the payee as a witness, who testified in part as follows:

*(Direct examination.)*

"Ques.  I will ask you to look at the note marked 'Exhibit A' and I will ask you to state to whom that note belonged at the time it was given.  Ans.  Belonged to me.

"Q.  Did anybody else have any interest?   A. No, sir.

"Q.  Or ownership in said note?   A.  No, sir.

"Q.  To whom did it belong?   I will ask you to state if you sold it to anybody.   A.  Yes, sir.

"Q.  To whom?   A.  Ed Nickelson.

"Q.  Now, at the time you sold it, had anybody acquired any interest or ownership in this note, from the time it was given down to the time you sold it to Ed Nickelson, besides yourself?   A.  No, sir.

"Q.  That is your signature on the back of the note, is it not?   A.  Yes, sir."

*(Cross-examination.)*

"Ques.  Mr. Headington, in what capacity were you acting at the time that you took this note from Mr. Dial?   Ans.  Special agent of the New York Mutual Life."

"Q.  Then when this note was made payable to A. B. Headington, special agent, it was meant as A. B. Head-

ington, special agent of the Mutual Life Insurance Company of New York, was it? A. Yes, sir.

"Q. Now then, at the time that you transferred this note to the plaintiff in this case it was the property of the Mutual Life Insurance Company of New York, was n't it? A. No, sir.

"Q. Were you in the employ of the Mutual Life Insurance Company of New York at that time? A. Yes, sir.

"Q. And this was taken for a premium, advance premium, was it, of the company? A. Yes, sir.

"Q. For what? A. Life-insurance.

"Q. For life-insurance? A. Yes, sir.

"Q. For what amount was the policy to be made, and upon whose life? A. J. M. Dial and his wife, Kate V. Dial."

"Q. You may state now, Mr. Headington, what company was to issue the policy for which this note was given? A. Mutual Life Insurance Company of New York."

*(Redirect examination.)*

"Ques. Did you have any arrangement—you say that you owned this note at the time it was given. Now, if it was given for insurance in the Mutual Life Insurance Company, how did you become the owner of it? Ans. I was an agent on commission.

"Q. Well, would this note represent your commission? A. No, sir; represents the commission and note premium.

"Q. Then how did you become the owner of the note? A. We have to pay a note premium in cash on the issuance of the policy.

"Q. Did you pay it? A. No, sir.

"Q. Why? A. Because the policy has never—

"Q. Has that premium become due yet? A. No, sir; it has not.

"Q. Have you been willing and ready to pay it whenever it should be? A. Yes, sir."

*(Recross-examination.)*

"Ques. When did your connection with the Mutual Life Insurance Company cease? A. In September, 1904 or 1905."

"Q. September, 1904? A. Something like that time.

"Q. Up to that period you had never reported this policy to the company at all, had you? A. No, sir."

The plaintiff then rested, and a demurrer to the evidence was sustained. By permission of the court the witness was recalled and gave further testimony, which reads:

"Ques. Mr. Headington, I would like to ask you if you were authorized to transfer this note by the Mutual Life Insurance Company of New York, at the time you sold and transferred it to Mr. Ed Nickelson? Ans. That is a question I don't know how to answer.

"Q. Well, did they? A. The authority we had is a contract.

"Q. Well, does that contract allow you to sell notes that are given for the first premium? A. Yes, sir.

"Q. It does? A. We are to pay cash for everything we get.

"Q. Now, I will ask you to state if you were required to pay cash, and if the notes which are taken for them belong to the agent and not to the company? A. They do."

Plaintiff then asked the witness this question:

"Ques. I will ask you to state if the rules of the Mutual Life Insurance Company of New York allow its special agents to take notes for the first premium— that is, that portion of the premium that belongs to the insurance company?"

Defendant objected on the ground that it was incompetent, irrelevant and immaterial, and not the best evidence. The objection was sustained. Plaintiff then made an offer of proof, which reads:

"Mr. Brock: Now, we offer to prove by this witness that the rules of the Mutual Life Insurance Company of New York don't allow its special agents to accept notes in payment of that portion of the first premium that would go to the insurance company, but that it allows the agents to take notes, but the notes belong to the agents, and they require the agents to pay cash to the company for that portion of the premium which goes to the company, and that the insurance company does n't have any interest in the note that is taken.

"Mr. Hessin: To which we object as incompetent, irrelevant and immaterial."

*Robert J. Brock,* for plaintiff in error.

*John E. Hessin,* and *John Clarke Hessin,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The assignments of error embrace the exclusion of evidence offered by the plaintiff, improper cross-examination by the defendant, sustaining the demurrer to plaintiff's evidence, and denying plaintiff's motion for a new trial.

The principal point insisted upon by the plaintiff in his argument is that the words "special agent," added to the name of the payee of the note, were merely *descriptio personæ,* and therefore the note, by its terms, was owned by A. B. Headington, and the indorsement in his proper name was sufficient. Many cases are cited which support this contention, but in our view this question is not in the case. The plaintiff did not rest upon the *prima facie* effect of his note, but the payee was placed upon the witness-stand to prove that he owned the note when it was taken. This opened the door to a full inquiry as to whether the payee took the note for himself or for the company. From the evidence of this witness it appears that the note was taken by the payee while acting as the special agent of the Mutual Life Insurance Company of New York, when he was engaged in the transaction of its business, and in payment of insurance which it was to furnish. It is not shown that he was authorized to sell notes so taken.

It further appears that no report was made to the insurance company informing it of such application for insurance and that payment therefor had been made by such note. The maker of the note has not been furnished with any policy of insurance. The payee ceased to be an agent of the insurance company in September, 1904, a few months after the date of the note and several months before it became due. The

Nickelson v. Dial.

note may never become due. If the insurance company should ever receive the application for insurance it may decline to issue a policy thereon, in which case the premium will not have to be paid. No consideration whatever has been received by the maker of the note.

It seems to us that if the note itself furnished a *prima facie* case for the plaintiff it has been completely destroyed by the testimony which he presented. The court might well have concluded that when the note was taken it belonged to the insurance company, and that no authority existed for its transfer by the agent, Headington.

It is insisted that the plaintiff was erroneously prevented from showing authority on the part of the payee to sell the note by the refusal of the court to permit the witness to state what the rules of the company were in this respect; but this question was objected to on the ground that it was not the best evidence, and, the witness having before stated that whatever authority he had was contained in his contract with the company, we are unable to perceive error in this ruling of the court. The contract was the best evidence. The same rule applies to the offer of proof.

It is insisted that the cross-examination made for the purpose of showing that when the note was taken it belonged to the insurance company was erroneous, because it tended to contradict the terms of the note, and because it was immaterial as against an innocent holder. As a general proposition this may be correct, but here it must be remembered that the plaintiff himself raised the question of ownership. He by his testimony made this a material matter outside of the note. Having undertaken for his own purposes to establish the right of the payee to transfer the note, he cannot avoid ordinary cross-examination of the witnesses offered for this purpose. If the plaintiff is not willing

to stand upon the terms of the note he cannot expect the defendant to do so.

We see no material error in the rulings of the trial court, and therefore the judgment is affirmed.